Slip Op. 20-146

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| VANDEWATER INTERNATIONAL, INC., <br><br>    Plaintiff, <br> v. <br><br>UNITED STATES, <br><br>    Defendant, <br> and <br><br>ISLAND INDUSTRIES, <br><br>    Defendant-Intervenor. | Before: Leo M. Gordon, Judge <br><br> Court No. 18-00199 |

**OPINION and ORDER**

[Remanding Final Scope Ruling to Commerce to conduct (k)(2) analysis.]

Dated: October 16, 2020

  Richard Preston Ferrin, Dorothy Alicia Hickok, and Douglas John Heffner, Faegre Drinker Biddle & Reath, LLP of Washington, DC, for Plaintiff Vandewater International, Inc.

  Joshua Ethan Kurland, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC., argued for Defendant United States. On the brief were Jeffrey Bossert Clarke, Assistant Attorney General, Jeanne E. Davidson, Director, L. Misha Preheim, Assistant Director, International Trade Field Office, New York, NY. Of counsel were John Anwesen and Saad Younus Chalchal, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce of Washington, DC.

  Matthew Jon McConkey, Mayer Brown LLP of Washington, DC, for Defendant-Intervenor Island Industries.

  Gordon, Judge: This opinion addresses the scope of the antidumping duty order on Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China, which covers:

>carbon steel butt-weld pipe fittings, having an inside diameter of less than 14 inches, imported in either finished or unfinished form. These formed or forged pipe fittings are used to join sections in piping systems where conditions require permanent, welded connections, as distinguished from fittings based on other fastening methods (e.g., threaded, grooved, or bolted fittings). Carbon steel butt-weld pipe fittings are currently classified under subheading 7307.93.30 of the Harmonized Tariff Schedule (HTS). Although the HTS subheading is provided for convenience and customs purposes, our written description of the scope of the order is dispositive.

Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China, 57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992) ("Order"). Plaintiff, Vandewater International Inc., sought a scope determination from the U.S. Department of Commerce ("Commerce") that their products, steel branch outlets used to join sections in fire sprinkler systems, are not covered by the Order. Commerce determined that they were. Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China, (Dep't of Commerce Sept. 10, 2018) (final scope ruling on Vandewater's steel branch outlets) ("Final Scope Ruling"). For the reasons set forth below, the court holds that Commerce unreasonably concluded that the sources in 19 C.F.R. § 351.225(k)(1) were dispositive on the inclusion of Plaintiff's steel branch outlets within the Order, and remands the matter to Commerce to conduct a full scope inquiry and evaluate the factors under 19 C.F.R. § 351.225(k)(2).

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing

Court No. 18-00199                                                                                           Page 3

agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2020). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2020).

## II. Discussion

Commerce may render a scope ruling after a full "scope inquiry," 19 C.F.R. § 351.225(e), or, as Commerce did in this case, on the expedited basis of a party's application and the sources listed in 19 C.F.R. § 351.225(k)(1) (the "descriptions of the

Court No. 18-00199 Page 4

merchandise contained in the petition [for imposition of an antidumping duty order], the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the [International Trade] Commission."). 19 C.F.R. § 351.225(d). Here, Commerce determined that the (k)(1) sources were dispositive and included Vandewater's steel branch outlets within the Order.

Had Commerce determined the (k)(1) sources were not "dispositive," Commerce would have conducted a full scope inquiry and evaluated the criteria under § 351.225(k)(2), which include the product's physical characteristics, ultimate purchasers' expectations, the ultimate use of the product, trade channels in which the product is sold, and the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2).

In rendering its scope determination Commerce began with a "plain reading" of the Order, finding that Vandewater's description of its steel branch outlets matched the description of the butt-weld pipe fittings in the Order:

> A plain reading of the scope includes carbon steel butt-weld pipe fittings that have an inside diameter of fourteen inches or less, which require a weld to be permanently attached to a piping system. Based on Vandewater's description, and the samples provided, the steel branch outlets are made of carbon steel, have an inside diameter of less than fourteen inches, and are used to join sections in fire sprinkler piping systems where conditions require permanent, welded connections. Thus, we find that Vandewater's description of its steel branch outlets matches the description of the scope covering butt-weld pipe fittings.

Final Scope Ruling at 9. Commerce omitted from its "plain reading" the scope language that distinguishes "fittings based on other fastening methods (e.g., threaded, grooved, or

bolted fittings)." Plaintiff's products have threaded or grooved ends on their non-weldable end. It is therefore not plainly apparent from the language of the Order whether a steel branch outlet qualifies as a butt-weld fitting covered by the Order or not. They may be covered: they are made of carbon steel, have an inside diameter of less than fourteen inches, and are used to join sections in fire sprinkler piping systems where conditions require a permanent, welded connection. They also may not be covered: they have a non-weldable, threaded or grooved end, and according to Vandewater, the weldable end is never joined to the sprinkler system via a true "butt-weld." The language of the Order itself simply does not resolve the issue of whether Vandewater's steel branch outlets are covered.

As for the (k)(1) sources, Commerce long ago included steel branch outlets virtually identical to Vandewater's within the scope of a companion antidumping duty order on butt-weld fittings from another country. Carbon Steel Butt-Weld Pipe Fittings from Taiwan, (Dep't of Commerce Mar. 25, 1992) (final scope ruling on Sprink, Inc. exclusion request) ("Sprink Scope Ruling"); see also Certain Carbon Steel Butt-Weld Pipe Fittings from Taiwan, 51 Fed. Reg. 45,152 (Dep't of Commerce Dec. 17, 1986) ("Taiwan Butt-Weld Order"). In the Final Scope Ruling here, Commerce noted this prior ruling:

> Sprink's scope inquiry request stated that "{i}t appears that the definition of a butt-weld fitting is one that requires welding as a method of attachment for all connections. The Sprink-let does require that it be welded onto the outside of the pipe, but the connection for the joining pipe is either threaded or grooved.
>
> Commerce specifically stated in its ruling, "the order does not require that all pipe fitting connections be welded." Commerce

> further stated that, "although the initial connection is obtained because of threading or grooving, the Sprink-let, like other products subject to this order, is permanently joined by welding." Commerce concluded that, "{a}ccording to the product descriptions presented above, a pipe fitting with beveled edges that is permanently joined through welding falls within the scope of the order on carbon steel butt-weld pipe fittings from Taiwan. Because the Sprink-let, possesses these characteristics, we determine that the Sprink-let, imported by Sprink, Inc. is within the scope of the antidumping duty order on carbon steel butt-weld pipe fittings from Taiwan."

Final Scope Ruling at 5-6 (footnotes omitted). For over 25 years, then, Commerce has treated steel branch outlets as butt-weld fittings. That would seem to be dispositive. Commerce, however, for some reason, chose to dismiss its Sprink Scope Ruling as non-binding:

> . . . We agree that the products at issue in the Sprink Scope Ruling were essentially physically identical to Vandewater's steel branch outlets. However, we note that Commerce analyzed those products under the Taiwan Butt-Weld Order and not the China Butt-Weld Order. We recognize that some of the language in both orders is the same, but as Vandewater points out, there is also language unique to the China Butt-Weld Order. Accordingly, we are not bound by the agency's analysis in the Sprink Scope Ruling, although we not [sic] that here, as in that case, we have concluded that the merchandise is covered by the scope of an antidumping duty order on "butt- weld pipe fittings" because the merchandise is permanently joined by welding.

Final Scope Ruling at 11 (emphasis added).

Commerce chose instead to look for support in its King Scope Ruling that fittings with only one weldable end were covered by the Order. Id. at 9 (citing Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China (Dep't of Commerce Oct. 20,

2009) ("King Scope Ruling"). The King Scope Ruling, however, dealt with subject butt-weld fittings used in applications other than pressurized piping systems—as handrails, fencing, and guardrails—it did not address dual-nature fittings like Vandewater's steel branch outlets. Commerce's reliance on the King Scope Ruling, which has no facial applicability or relevance to Vandewater's branch outlets, and Commerce's eschewing the Sprink Scope Ruling, signals to the court that something is not quite right with Commerce's (k)(1) analysis.

The court was further confused by the balance of Commerce's (k)(1) analysis. Searching for dispositive support among the (k)(1) sources to cover the steel branch outlets, Commerce identified two quotes, one from the petition and one from the U.S. International Trade Commission ("ITC") sunset review. The petition language reads: "{t}he edges of finished butt-weld fittings are beveled, so that when a fitting is placed against the end of a pipe (the ends of which have also been beveled), a shallow channel is created to accommodate the 'bead' of the weld which joins the fitting to the pipe." Final Scope Ruling at 9–10 (quoting Petitioners' Letter, "In the Matter of Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China and from Thailand," dated May 22, 1991 (Petition)). The quoted language contemplates beveling on both parts of the assembled pipe—"{t}he edges . . . are beveled, so that when a fitting is placed against the end of a pipe (the ends of which have also been beveled) . . .." Vandewater pointed out to Commerce that its branch outlets, although beveled on one end, do not join to a beveled end on the header pipe. The quoted petition language, which contemplates

beveling on both parts of the assembled pipe, is therefore not descriptive of the actual physical characteristics of Vandewater's steel branch outlets.

The quoted language Commerce relied upon from the ITC sunset review suffers from the same problem as the petition language—it contemplates beveling on both parts of the assembled pipe: "When placed against the end of a beveled pipe or another fitting, the beveled edges form a shallow channel that accommodates the 'bead' of the weld that fastens the two adjoining pieces." Final Scope Ruling at 10 (quoting Carbon Steel Butt-Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and Thailand, Inv. Nos. 731-TA-308-310 and 520-521, at I-4 (Fourth Review), USITC Pub. 4628 (Aug. 2016)). Again, though, Vandewater's branch outlets are welded to header pipe, which is not, apparently, beveled at the weld. The quoted sunset review language is therefore not descriptive of the actual physical characteristics of Vandewater's steel branch outlets.

Commerce also highlights butt-weld caps as an example of a butt-weld fitting that has only one weldable end. Id. at 10. A butt-weld cap though does not also have threads or grooves, problematical attributes that are expressly excluded from the Order.

Other than the Sprink Scope Ruling, which Commerce dismisses as non-binding, the other (k)(1) sources Commerce relied upon as dispositive (the King Scope Ruling, the petition language, and the language from the ITC sunset review) do not really tell the court anything about the inclusion of steel branch outlets within the scope of the Order. Commerce's determination that the (k)(1) sources are dispositive is therefore not reasonable (unsupported by substantial evidence).

Court No. 18-00199                                                                                           Page 9

For whatever reason Commerce does not have much confidence in its <u>Sprink Scope Ruling</u>. Given that posture, the court believes that Commerce must consider the factors under (k)(2) to determine whether Vandewater's steel branch outlets are within the scope of the <u>Order</u>. Accordingly, it is hereby

**ORDERED** that Commerce's determination that the (k)(1) materials are dispositive of the inclusion of Vandewater's steel branch outlets within the scope of the <u>Order</u> is unreasonable; it is further

**ORDERED** that this matter is remanded to Commerce to conduct a scope inquiry to evaluate the factors under (k)(2); it is further

**ORDERED** that Commerce shall file its remand results once the scope inquiry is completed; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.

/s/ Leo M. Gordon  
Judge Leo M. Gordon

Dated: October 16, 2020  
      New York, New York