**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE**

VANDEWATER INTERNATIONAL INC.,

                     Plaintiff,

      v.

UNITED STATES,

                     Defendant,

          and

ISLAND INDUSTRIES,

                     Defendant-Intervenor.

Court No. 18-00199

**COMMENTS OF VANDEWATER INTERNATIONAL INC.**
**IN OPPOSITION TO COMMERCE'S REMAND REDETERMINATION**

Douglas J. Heffner
D. Alicia Hickok
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005
(202) 230-5803

Counsel for Plaintiff

Dated: September 24, 2021

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.  COMMERCE'S CONCLUSION THAT THE PHYSICAL CHARACTERISTICS OF OUTLETS DO NOT DIFFER FROM BUTT-WELD PIPE FITTINGS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE. ............................................................................................... 1

   A.   The Starting Place for the Analysis Whether an Article is a "Butt Weld Pipe Fitting" Is the Definition of a "Butt Weld." ............................................................................................ 2

      1.   A Butt Weld Is an End-to-End Welded Connection.  The Evidence on This Point Is Overwhelming ...................................................................................................................... 2

         a.   Sperko Declarations and Expert Report ............................................................. 3

         b.   Numerous Definitions and Other Materials Prepared in the "Ordinary Course of Business" ................................................................................................................. 9

         c.   The Petition Itself and the 2016 ITC Sunset Review .......................................... 9

         d.   Common Sense Regarding the Term "Butt Weld" ............................................ 11

      2.   Commerce's Assertion That the Connection Between the Contoured End of an Outlet and the Side of the Header Pipe Is a Butt-Weld Connection Is Unsupported by Substantial Evidence ........................................................................................................................... 11

   B.   Commerce's Pointing to Caps, Lap Joint Stub Ends, and Saddles as Butt-Weld Pipe Fittings Is a Red Herring, Because These Fittings Have One Butt-Weld End Whereas Vandewater's Welded Outlets Have No Butt-Weld Ends and Therefore Are Distinguishable in Physical Characteristics, Regardless of Whether These Other Products Are Classified as Butt-Weld Pipe Fittings ................................................................................................................ 15

      1.   Commerce Itself States That Butt-Weld Outlets Must Be Butt Welded At Both Connections to Constitute Butt-Weld Pipe Fittings ............................................................. 15

      2.   Unlike Caps, Lap Joint Stub Ends, and Saddles, Vandewater's Grooved and Threaded Outlets Contain Zero Butt-Weld Ends ................................................................ 16

      3.   Saddles Are Distinguishable from Butt-Weld Pipe Fittings for Several Reasons ...... 17

   C.   Commerce's Analysis of Industry Standards Is Unsupported by Substantial Evidence. . 18

      1.   Commerce Misunderstands the Importance of Industry Standards in Distinguishing Physical Characteristics of Product Groups ......................................................................... 18

      2.   Commerce Misinterprets the ITC's Position on Industry Standards. ......................... 20

   D.   Different HTSUS Classifications ....................................................................................... 22

III. COMMERCE'S CONCLUSION THAT THE USES, THE EXPECTATIONS OF ULTIMATE USERS OF OUTLETS, AND THE CHANNELS OF TRADE DO NOT DIFFER FROM BUTT-WELD PIPE FITTINGS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE ........................................................................................................................... 22

IV.  COMMERCE'S CONCLUSION THAT THE MANNER IN WHICH OUTLETS ARE DISPLAYED AND ADVERTISED DIFFERS FROM BUTT-WELD PIPE FITTINGS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE. .......................................................... 25

V.    SUSPENSION OF LIQUIDATION AND CASH DEPOSIT REQUIREMENTS. ............. 27

VI.    CONCLUSION. .......................................................................................................... 27

ACTIVE.134159043.10

# TABLE OF AUTHORITIES

## Cases

*Agilent Techs. v. United States*, ___ CIT ___, 256 F. Supp. 3d 1338 (2017) ........................ 1, 5-6

*Allegheny Ludlum Corp. v. United States*, 24 CIT 452, 112 F. Supp. 2d 1141 (2000) ............... 5

*A.L. Patterson, Inc. v. United States*, 36 CIT 1132 (2012) ........................................... 5

*Diamond Sawblades Mfr's Coal. V. United States*, 986 F.3d 1351 (Fed. Cir. 2021) .................. 4

*E.I. DuPont de Nemours & Co. v. United States*, 17 CIT 1266, 841 F. Supp. 1237 (1993) ......... 1

*Kirovo-Chepetsky Khimichesky Kombinat, JSC v. United States*, ___ CIT ___, 58 F. Supp. 3d 1397 (2015) ........................................................................................................ 5

*OMG, Inc. v. United States*, 972 F.3d 1358 (Fed. Cir. 2020) ................................................. 2, 11

*Russ Berrie & Co., Inc. v. United States*, 23 CIT 429, 57 F. Supp. 2d 1194 (1999) ................... 1

*Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) (*en banc*) ............................... 1

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........................................................ 1

## Administrative Determination

*Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China*, 57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992) (antidumping duty order and amended final determ.) ........................................................................................................... 18

## Other Authority

Fed. R. Evid. 702 ........................................................................................... 4-5 & n.3

ACTIVE.134159043.10

## I.  INTRODUCTION

Commerce's remand determination is a textbook attempt to point to twigs—not even trees—and say that makes it a forest.  Simply put, Commerce's remand determination ignores the overwhelming evidence from an expert in the industry, the petition, the staff report of the U.S. International Trade Commission ("ITC"), Commerce's own determination in Forged Steel Pipe Fittings, and just plain old common sense.  This is a classic gambit by Commerce to point to minutiae to cloud the overwhelming evidence against it.

## II.  COMMERCE'S CONCLUSION THAT THE PHYSICAL CHARACTERISTICS OF OUTLETS DO NOT DIFFER FROM BUTT-WELD PIPE FITTINGS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

"A decision is supported by substantial evidence if the evidence amounts to 'more than a mere scintilla' and 'a reasonable mind might accept as adequate to support a conclusion.'" *Sunpreme Inc. v. United States*, 946 F. 3d 1300, 1308 (Fed. Cir. 2020) (*en banc*) (internal citations and quotation marks omitted); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("{t}he substantiality of evidence must take into account whatever in the record fairly detracts from its weight").

This Court has explained that "'substantial evidence supporting an agency determination must be based on the whole record.  The "whole record" means that the Court must consider both sides of the record.  It is not sufficient to examine merely the evidence that sustains the agency's conclusion.'" *Russ Berrie & Co., Inc. v. United States*, 23 CIT 429, 431, 57 F. Supp. 2d 1184, 1187 (1999) (quoting *E.I. DuPont de Nemours & Co. v. United States*, 17 CIT 1266, 1268, 841 F. Supp. 1237, 1240 (1993) and citing *Universal Camera*, 340 U.S. at 488).  "If the Department fails to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion, the Department's determination is unsupported by substantial evidence" *Agilent Techs. v. United States*, ___ CIT ___, 256 F. Supp. 3d 1338, 1343 (2017) (cleaned up).

Even more to the point, Commerce must ask the right question and apply the right focus. Commerce's failure to do so here is based on the same sort of conflation the Federal Circuit recently found in *OMG, Inc. v. United States*, 972 F.3d 1358, 1365 (Fed. Cir. 2020), where Commerce had "failed to consider the relevant question" because nails "constructed of two or more pieces" are not "fasteners of two or more pieces, one of which is a nail." *Id*. The rationale that one uses a hammer in installing both a nail and an anchor does not change the fact that the use of the hammer differs in significant ways between the two products. *Id*. at 1364-65. In exactly the same way, the fact that different pipe fittings are welded does not transform a fitting that has no butt weld into a butt-weld pipe fitting.

A. **The Starting Place for the Analysis Whether an Article is a "Butt Weld Pipe Fitting" Is the Definition of a "Butt Weld."**

1. **A Butt Weld Is an End-to-End Welded Connection. The Evidence on This Point Is Overwhelming.**

American Welding Society ("AWS") A3.0, *Standard Terms and Definitions*, defines a *butt weld* as a nonstandard term for a *butt joint*. It defines a *butt joint* as "{a} joint type in which the butting ends of one or more workpieces are aligned in approximately the same plane." Vandewater Scope Request (May 17, 2018) (hereinafter "Scope Request"), PD 3 Ex. 7, bar code 3708194-02 (hereinafter "May 11, 2018 Sperko Declaration") ¶ 11.[1] In contrast, AWS defines a *corner joint* as "{a} joint type in which butting or nonbutting ends of one or more workpieces converge approximately perpendicular to one another." *Id*. Commerce never explains why this straightforward distinction is wrong; instead, it looks at other factors that may be similar between butt-weld pipe fittings and other fittings and concludes that if there are those similarities, fittings

---

[1] Although cited in the May 11, 2018 Sperko Declaration, obviously the AWS *Standard Terms and Definitions* document was prepared in the ordinary course of business, and was not prepared for the purpose of this administrative proceeding or associated litigation.

are butt-weld pipe fittings.  In ignoring the basic definition above, Commerce also ignores

significant portions of the record, all of which confirm the above definition.

### a.    Sperko Declarations and Expert Report

The administrative record contains extensive unrebutted evidence from a declaration and

an expert report from Walter Sperko, confirming that a butt weld is—by definition—an end-to-

end welded connection.  The Declaration of Walter Sperko, attached to Vandewater's initial

scope request in 2018, states as follows:

> A butt-weld pipe fitting is always welded to the *end* of a pipe,
> another butt weld fitting or a butt weld valve.  *It is always an end-*
> *to-end connection.*  In contrast, an outlet fitting is welded to a hole
> cut in the wall of the pipe, not to the end of the pipe.

May 11, 2018 Sperko Declaration ¶ 14 (emphasis original).  Mr. Sperko further attested in his

May 11, 2018 Declaration that "{j}oints between butt welding fittings and pipe are always in the

same plane.  Joints between outlet fittings are always between members that are perpendicular to

each other." *Id*. ¶ 11.

"A butt-weld has a very specific industry meaning.  The American Welding Society

(AWS) defines a butt weld as a 'joint type in which the butting ends of one or more work pieces

are aligned in approximately the *same plane*." Vandewater Rebuttal Factual Information Letter

(June 29, 2018), PD 18, Ex. 10, bar code 3725249-02 (hereinafter "June 28, 2018 Sperko

Declaration") ¶ 1.D (emphasis added).

Commerce's response to the Sperko Declaration is as follows:

> Ultimately, the importers ask us to ignore the product catalog of
> Aleum USA and Bonney Forge (the latter of which was placed on
> the record by Vandewater) and to place greater weight on the
> expert affidavit provided in support of Vandewater's scope request
> and an affidavit place on the record for the purpose of this
> litigation.  We decline to do so, and we note that Commerce
> regularly considers whether documents are prepared in the
> ordinary course of business—or prepared specifically for the

> administrative proceeding—in determining the appropriate weight
> to accord to record evidence. Moreover, as discussed elsewhere in
> these final results, we find that portions of the affidavits support
> our conclusion regarding the scope status of Vandewater's outlets.

Commerce Final Remand Redetermination, at 85-86.[2]

Commerce excuses its failure to credit the Sperko Declaration on the ground that it was

prepared in the course of litigation. Commerce's decision to disregard must be based on the

reason it articulated. *Diamond Sawblades Mfr's Coal. v. United States*, 986 F. 3d 1351, 1365-66

(Fed. Cir. 2021), but Commerce's rationale here cannot stand, both because it is inconsistent

with Federal Rule of Evidence 702 and because it is factually inaccurate. Federal Rule of

Evidence 702 requires a factfinder to evaluate the knowledge of the expert, the facts and data and

analysis on which the opinions are based, and how they were applied to the facts of the case.

---

[2] Commerce addresses the Sperko Declaration only superficially in footnote 542, reasoning that the Sperko Declaration "is consistent with a finding that the contoured end of an outlet features a '*full-penetration* or partial penetration groove weld reinforced by a fillet weld.'" Commerce Final Remand Redetermination, at 86 n.542 (emphasis added by Commerce). But Sperko made clear in his affidavit that a "full penetration" weld is *not* synonymous with a butt weld. May 11, 2018 Sperko Declaration ¶ 15. Commerce also cites a statement in the May 11, 2018 Sperko Declaration that "{b}utt-weld pipe fittings most commonly are manufactured using *seamless pipe* as the raw material," and "for lower pressure applications, *branch outlets may also be machined from seamless or welded pipe* and tube" …. Commerce Final Remand Redetermination, at 86 n.542 (emphasis added by Commerce). Commerce cannot identify any testimony in this regard, because Sperko did *not* say that Vandewater's threaded or grooved welded outlets are made from seamless pipe. In fact, the only record evidence on the issue shows that Vandewater's threaded steel branch outlets are produced from steel bars, which are manufactured into a tubular shape by a hot forging die process. Rebuttal Comments of Vandewater International Inc. on (K)(2) Factors (Dec. 3, 2020) (hereinafter "Vandewater Dec. 3, 2020 Remand Comments"), Remand PD 43, bar code 4061153-01, at 3, and Vandewater's grooved steel outlets are made from *welded* pipe. *Id.* In contrast, butt-weld pipe fittings typically start with *seamless* pipe, which is then formed into a proper shape over a mandrel). *Id.* Dr. Sperko adds that B16.9 butt-weld pipe fittings start out as straight pipe for everything except caps, which start out as plate. Comments of Vandewater International Inc. on K(2) Factors (Nov. 19, 2020) (hereinafter "Vandewater Nov. 19, 2020 Comments"), Tab 6, Remand PD 20, bar code 4055605-10 (hereinafter "Sperko Expert Report"), at 13 of 32.

ACTIVE.134159043.10

F.R.E. 702.[3]  All of these factors from F.R.E. 702 demonstrate the strength of the Sperko

Declaration here, and the materials he used to reach his opinions were *not* generated in the

course of litigation.  Accordingly, Commerce had no basis for disregarding the Sperko

Declaration, and the rationale it gave cannot stand.  *See A.L. Patterson, Inc. v. United States*, 36

CIT 1132, 1136 (2012) ("'It is well-established that Commerce's total failure to consider or

discuss record evidence which, on its face, provides significant support for an alternative

conclusion renders the Department's determination unsupported by substantial evidence'")

(quoting *Allegheny Ludlum Corp. v. United States*, 24 CIT 452, 479, 112 F. Supp. 2d 1141, 1165

(2000)).  It is also inconsistent with Commerce's practice.  *See Kirovo-Chepetsky Khimichesky*

*Kombinat, JSC v. United States*, ___ CIT ___, 58 F. Supp. 3d 1397, 1412 (2015) ("Uralchem

claims it was arbitrary and capricious for Commerce to ignore scientific and expert evidence…

However, Commerce responded at length to Uralchem's evidence….  The Court has already

found that Commerce gave adequate consideration to Uralchem's scientific and expert

submissions and reached a decision supported by the record evidence.").  This Court has

remanded Commerce's scope determination findings where Commerce failed to give sufficient

consideration to record evidence, including a declaration from an expert submitted during the

course of the scope proceeding.  *See Agilent Technologies. v. United States*, ___ CIT ___, 256 F.

Supp. 3d 1338, 1341, 1345 (2017) (noting recent declaration provided by plaintiff's R&D Project

Manager to support certain assertions regarding thermal performance of the plaintiff's product

and concluding that Commerce's rejection of this evidence was insufficient).  Indeed, in *Agilent*

*Technologies*, the Court rejected a rationale very similar to this one:

---

[3] Although F.R.E. 702 is not binding on the factfinder here (Commerce), the underlying
principles should guide Commerce, and this Court in its role in vetting Commerce's fact-finding
for substantial evidence.

> The court finds that Commerce's scope ruling did not adequately discuss the record evidence submitted in support of Agilent's position, including the R&D Declaration and questionnaire responses…. Commerce did not explain why the description of thermal performance requirements contained in Agilent's submission, including the explanations in the R&D Declaration, were insufficient to satisfy the thermal performance test of the exclusion. Commerce did not consider Agilent's R&D Declaration because it was prepared in 2015, while the MFR product was designed fifteen years earlier. Apparently Commerce disregarded the information in the R&D Declaration because the document was not created contemporaneously with the development of the MFR. The Department failed to cite any relevant authority to support its position that the information contained in a recently created document was inadequate or inherently unreliable. The court is not convinced that it was reasonable for Commerce to ignore a sworn declaration merely because it was written years after the product was designed. Presumably the declarant was informed of the MFR's original design, production, specific thermal performance requirements, testing requirements, and other relevant information.

*Id.* at 1345.

Moreover, even if an opinion formed during the course of litigation could be deemed suspect—and it cannot be—Mr. Sperko's opinion demonstrably predated the litigation. A paper authored by Walter Sperko in 2012 shows the different joint designs for piping welds. The paper, entitled "Welding Fire Protection Piping 101", is attached as exhibit 8 to Vandewater's Scope Request. Scope Request, PD 3 Ex. 8, bar code 3708194-02; *see also* May 11, 2018 Sperko Declaration ¶ 7 (noting that he authored "Welding Fire Protection Piping 101"). The paper illustrates how butt welds differ in configuration from other types of welds, as shown below:

ACTIVE.134159043.10



Welding Fire Protection Piping 101
By Walter J. Sperko, P.E.

## Typical Joint Designs for Piping Welds
### Butt welds

### Run and Header Branch Connection Welds



### Drop Pipe to Header Connections



### Socket and Slip-on Flange Welds

The following apply unless another size is shown on the engineering drawings:
T is the nominal header wall thickness.
X = the lesser of 1.4T or the hub thickness
Y = the lesser of 1.1T or 1.1 times the fitting thickness
Z = the lesser of 1.4T or 1.4 times the fitting thickness

"Welding Fire Protection Piping 101", at 7 of 23.[4]

---

[4] Mr. Sperko adds that "{h}eader branch welds are connections that are stubbed into or onto a header to carry water to outlet connections. Header branch welds are frequently used in lieu of tees. An outlet connection leading to a spray nozzle ("drop pipe") is not considered a header branch weld." Welding Fire Protection Piping 101, at 4 of 23 n.1.

ACTIVE.134159043.10

The paper also shows a cross-section picture of an outlet connection to a header pipe, including the nature and geometry of the connection weld:

## Figure 11

## Outlet Connection Welds



Figure shows a header pipe split the long way showing an outlet nozzle and attaching weld. Note that the weld does not penetrate into the root of the joint, indicating that the weld is partial penetration. This is evident from the lack of weld metal in the weld cross-section root area (red arrow) and from the inside root surface (green arrows).

*Id*. at 19 of 23. Although the "Welding Fire Protection Piping 101" paper was prepared by Walter Sperko, it was prepared long before the underlying administrative proceeding or litigation here, and was prepared in the ordinary course of business by Mr. Sperko. It is fully consistent

with the conclusions reached by Mr. Sperko in the Sperko Affidavit and the Sperko Expert Report.

Commerce's disregard of the substance and the sources relied on in the Sperko Declaration, except for the two offhand and inaccurate references discussed in footnote 2, *supra*, show that Commerce's conclusion was not based on substantial evidence.

### b. Numerous Definitions and Other Materials Prepared in the "Ordinary Course of Business"

In any case, the unambiguous AWS definition cited above predated the Sperko Declaration and the Sperko Expert Report.

Likewise, the website of Werner Sölken (a specialist in piping equipment)—known as "wermac.org"—includes a description generated in the ordinary course of business of the five different types of welding joints, along with several illustrations that show "butt welded joints" (which show the characteristic end-to-end connection of a butt weld) and "fillet welded joints" (which show tee, lap, and corner joints, none of which feature an end-to-end connection). *See generally* Scope Request, Ex. 20 (www.wermac.org, "Welding Joints—Butt welded & Fillet welded Joints"), PD 5, bar code 3708194-04. Commerce simply ignores these materials, in further disregard of its obligation to consider the whole of the record.

### c. The Petition Itself and the 2016 ITC Sunset Review

Indeed, the Petition and 2016 Sunset Review plainly show that a butt-weld pipe fitting is intended to be an end-to-end connection. Commerce has never explained why these authorities are insufficient to establish that the outlets in question are not butt-weld pipe fittings. The Petition states that "{t}he edges of finished butt-weld fittings are beveled, *so that when a fitting is placed against the end of a pipe (the ends of which have also been beveled)*, a shallow channel is created to accommodate the 'bead' of the weld which joins the fitting to the pipe." Petition, at

4, PD 38, bar code 3747665-01 (emphasis added); *see also* Vandewater Comments on Factual

Information Placed on the Record by the Department (Sept. 5, 2018), PD 45, bar code 3751352-

01 (hereinafter "Vandewater Sept. 5, 2018 Comments"), at 2 (quoting Petition).

The 2016 ITC Sunset Review states that "*{w}hen placed against the end of a beveled*

*pipe or another fitting*, the beveled edges of a butt-weld pipe fitting form a shallow channel that

accommodates the 'bead' of the weld that fastens the two additional pieces." *Carbon Steel Butt-*

*Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310

& 520-521 (4th Review), USITC Pub. 4628 (Aug. 2016) (hereinafter "2016 ITC Sunset

Review"), PD 37, bar code 3747665-01, at 6 (emphasis added); *see also* Vandewater Sept. 5,

2018 Comments, at 4 (quoting 2016 ITC Sunset Review); Vandewater Nov. 19, 2020

Comments, Remand PD 11, bar code 4055605-01, at 6-7 (same).  This language, in both the

Petition and the 2016 ITC Sunset Review, makes clear that a butt-weld pipe fitting is designed to

be placed against the *end* of a pipe, not the *side* of a pipe.  If the class or kind of butt-weld pipe

fittings had included fittings that are designed to be welded to the side of a pipe, there would be

no basis for these observations.

Commerce has simultaneously adopted the positions that "the Petition and an ITC report

cited by the importers imply that end-to-end connections a beveling on the recipient pipe *are*

*important characteristics of BWPFs*[5]—a conclusion that is supported fully by the above-cited

language—and that construing the Petition and ITC report in this way leads to an impermissible

"end-use requirement for subject merchandise) (*i.e.*, the butt-weld pipe fitting can only be used

with a subset of recipient pipes, limited to those with beveled edges of a particular angle)."  Final

Remand Redetermination, at 49.  These positions are completely irreconcilable, and demonstrate

---

[5] Final Remand Redetermination at 49, n.345 (emphasis added).

the absurdity of Commerce's determination regarding the clear *requirement* that butt-weld pipe fittings utilize an end-to-end connection.  Indeed, as discussed previously, the requirement that butt-weld pipe fittings utilize this kind of connection impacts the very shape of the fitting itself, requiring ends that are beveled at a 37.5-degree angle.  *See*, *e.g.*, Scope Request, ex. 4 (ASME B16.9, Factory-Made Wrought Buttwelding Fittings), PD 3, bar code 3708194-02, Table 12 (showing bevel angle of 37.5 degrees ± 2.5 degrees); Scope Request, Exhibit 20 (www.wermac.org, "Welding Joints—Butt welded & Fillet welded Joints"), page 2 of 5.  To reduce this requirement and corresponding physical attribute to an impermissible "end use" requirement is detached from reality and the record evidence.

### d. Common Sense Regarding the Term "Butt Weld"

Finally, the Court can and should use common sense to evaluate the meaning of the term "butt weld" and conclude that the presence of a butt weld in all butt-weld pipe fittings, and the absence of any butt weld in welded outlets, constitutes a significant physical difference that underscores the lack of substantial evidence and the fact that Commerce focused on the wrong question.  *See OMG*, 972 F.3d at 1365; *see also* Sperko Expert Report, at pages 4&5 of 32.

### 2. Commerce's Assertion That the Connection Between the Contoured End of an Outlet and the Side of the Header Pipe Is a Butt-Weld Connection Is Unsupported by Substantial Evidence.

In addition to rejecting substantial evidence on which it should rely, Commerce seizes on out-of-context pieces of information to rationalize its position that contoured edges that connect to the midsection of a pipe are instead butt-weld pipe fittings.  For example, Commerce relies on the product specification sheets from Aleum USA, a U.S.-based distributor of outlets, which it finds "'*describes its female threaded outlet and grooved outlet as having "butt welding ends"'*'" and another company's product catalog (Bonney Forge), which "'includes an illustration of a "vesselet,"'" where "'*the illustration refers to the contoured end as a "buttweld'" and the*

*accompanying description states that the vesselet features a "true butt-weld installation in header.""""* Final Remand Redetermination, at 85 (quoting Commerce Draft Redetermination (Apr. 19, 2021), Remand PD 53, bar code 4111297-01, at 46-47) (emphasis by Commerce). Commerce concludes that "{t}hese sources demonstrate that contoured ends, such as the fishmouth shaped end (*e.g.*, on the bottom of an outlet or saddle) constitutes a buttwelded connection." *Id*.

These specification sheets do not provide a sufficient basis for determining the meaning of a "butt-welded" pipe fitting, as found within the scope. Accordingly, a core component of Commerce's reasoning in the remand redetermination (*i.e.*, that the connection between the contoured end of an outlet and the side of the header pipe is a butt-weld connection) is not based on substantial record evidence.

The Aleum USA specification sheets relied on by Commerce pertain to a "female threaded outlet" and "grooved outlet," not a "butt-weld pipe fitting." Island k(2) Analysis of Vandewater "Steel Branch Outlets" (Nov. 19, 2020), Exhibits 4A & 4B (hereinafter "Island Nov. 19, 2020 Remand Comments"), Remand PD 38, bar code 4055670-04. However, despite this, Commerce suggests that Aleum USA's usage of the term "butt-welding ends" to describe one of the ends of these products somehow means that, like "female threaded outlets" and "grooved outlets," "butt-weld pipe fittings" may have a curved edge that connects to the middle of a pipe. Final Remand Redetermination, at 46-47.

Most important, as Commerce concedes,[6] the Aleum diagrams make clear that the Aleum outlets have a contoured end and a threaded end, much like the welded outlets at issue here. But,

---

[6] *See* Final Remand Redetermination, at 46-47 ("Like Vandewater's outlets, Aleum USA's outlets have one threaded or grooved end and a contoured edge on the other end that is connected to the middle of another pipe").

ACTIVE.134159043.10

as part of what should be an analysis of the physical characteristics, Commerce then ignores the relevant physical characteristics. That is, Commerce ignores the fact that while the Aleum outlets have ends like the Vandewater outlets, neither the Aleum or Vandewater outlets have ends like the butt-weld fittings shown and described in the Petition and in the ITC materials. Having demonstrates that the physical characteristics of the Aleum and Vandewater outlets are similar to each other, Commerce never contends with the obvious facts on the record that the physical characteristics of those outlets differ sharply from the physical characteristics of butt-weld pipe fittings.

Commerce's reliance on the wording in a single phrase of a single distributor's specification sheets of products that are expressly not "butt-weld pipe fittings" to distinguish the physical characteristics of outlets and butt-weld pipe fittings, does not rise to the level of a substantial-evidence basis for this determination.

Likewise, the Bonney Forge catalog reference to a "Vesselet" is not an identification of a saddle butt-weld pipe fitting. Final Remand Redetermination, at 85 & n.537 (citing Vandewater Remand Redetermination Comments, Tab 14 (Bonney Forge catalog at 23)). In fact, the language is clear that an insert in the side of a header pipe can be welded to a branch pipe that can contain a butt weld. It does NOT mean that a fitting with a fishmouth-shaped (or saddle-shaped) end can be butt welded onto the side of a header pipe. This is because whereas the contoured part of a saddle fits onto the side of a header pipe so that its edges are welded on a parallel plane with the pipe to which it connects, branch outlets are welded at a 90-degree angle to the side of the header pipe, and require a different kind of weld: a fillet weld.

The presence of the "vesselet" description in the Bonney Forge catalog also does not mean that Bonney Forge believes that its vesselet is a butt-weld pipe fitting. Bonney Forge said

ACTIVE.134159043.10

as much in the Forged Steel Fittings proceeding. In that proceeding, Bonney Forge (and its co-petitioner, the United Steelworkers) testified in the Forged Steel Fittings proceeding that "the industry does not consider a welded outlet to be a 'butt weld fitting,' which is a specific type of fitting made to specific specifications." Vandewater Nov. 19, 2020 Comments, at 16 & Tab 9 (Vandewater Letter from Bonney Forge/USW to the Department, Case Brief on Scope (May 29, 2018)), PD 21, bar code 4055634-11, at 3. Bonney Forge added that "{i}n short, the product processes, end uses, and physical characteristics of outlets, regardless of whether the outlets are butt-weld, socket-weld, or threaded." *Id*. at 16 & Tab 9. Furthermore, *Commerce agreed* in that proceeding that outlets are not butt-weld pipe fittings.

Commerce stated that "{o}utlets with a socket-weld or threaded end connection, or with only one butt weld end connection, are not considered a butt weld fitting and therefore, are not excluded from the scope of the investigations." Vandewater Nov. 19, 2020 Comments, Tab 8 (Forged Steel Fittings Final Scope Determination), PD 21, bar code 4055634-11, at 8-9. This is why Commerce agreed to the request by Bonney Forge (and Vandewater) for a *scope exclusion* of Vandewater's low-pressure grooved and threaded outlets from the scope of the *Forged Steel Fittings* investigation: because Bonney Forge, Vandewater, *and Commerce* all knew that these products were *not* butt-weld pipe fittings and therefore could not simply be considered out of scope simply by virtue of the scope language exempting all butt-weld pipe fittings from the forged steel fittings order. Vandewater Nov. 19, 2020 Comments, at 17 n.28.

Now, Commerce seeks to excuse its inconsistency by saying "our construction of an exclusion in a separate proceeding is not determinative here." Final Remand Redetermination, at 85 n.539. But Commerce is obligated not to be arbitrary or capricious across proceedings, and it

ACTIVE.134159043.10

cannot use the same evidence that it relied on to conclude that outlets were *not* butt-weld fittings as evidence that they are.

**B.** **Commerce's Pointing to Caps, Lap Joint Stub Ends, and Saddles as Butt-Weld Pipe Fittings Is a Red Herring, Because These Fittings Have One Butt-Weld End Whereas Vandewater's Welded Outlets Have No Butt-Weld Ends and Therefore Are Distinguishable in Physical Characteristics, Regardless of Whether These Other Products Are Classified as Butt-Weld Pipe Fittings**

Commerce next tries to blur the distinction between welded outlets and butt-weld pipe fittings by asserting that caps, lap joint stub ends, and saddles each have only one butt-welded end, yet are considered to be butt-weld pipe fittings. Final Remand Redetermination, at 83-85. In the case of lap joint stub ends and saddles, the non-butt-welded ends are ends that feature non-permanent connections, just like Vandewater's grooved and threaded welded outlets. Therefore, according to Commerce, Vandewater's grooved and threaded welded outlets are similar in physical characteristics to butt-weld pipe fittings, rather than differing in physical characteristics. Commerce's argument is meritless.

**1.** **Commerce Itself States That Butt-Weld Outlets Must Be Butt Welded At Both Connections to Constitute Butt-Weld Pipe Fittings.**

Commerce has previously found that outlets with even a single butt end are not butt-weld pipe fittings. In its Final Scope Determination Decision Memorandum in the investigations of Forged Steel Fittings from China, Italy, and Taiwan, Commerce stated the following:

> Consistent with our *Preliminary Determination*, we continue to find it inappropriate to include butt weld outlets in the scope of the investigations; therefore, for this final scope determination, Commerce finds that butt weld outlets and butt weld fittings are excluded from the scope of the investigations. *To clarify, butt weld outlets must be butt welded at both end connections to be excluded from the scope of the investigations. Outlets with a socket-weld or threaded end connection, or with only one butt weld end connection, are not considered a butt weld fitting and, therefore, are not excluded from the scope of the investigations.*

15

Forged Steel Fittings Final Scope Determination, at 8-9 (emphasis added). Commerce also

stated in the same scope memorandum that "{u}nlike butt weld fittings, forged steel fittings can

have a variety of end finishes including threaded or socket-welds. This language demonstrates

that butt weld fittings can only have butt welded end connections, and as stated above, only butt

weld outlets with butt welded end connections are excluded from the scope of the

investigations." *Id*. at 9.

This detailed discussion by Commerce should be the end of the matter. Vandewater's

grooved and threaded welded outlets are not butt-weld pipe fittings because their end

connections on the run side are grooved or welded, not butt-weld end connections.

### 2. Unlike Caps, Lap Joint Stub Ends, and Saddles, Vandewater's Grooved and Threaded Outlets Contain Zero Butt-Weld Ends

Notwithstanding what Commerce declared in the Forged Steel Fittings investigation in

2018, Commerce insists in this remand proceeding that BWPFs do include caps, lap joint stub

ends, and saddles. *See* Commerce Final Remand Redetermination, at 23 (asserting that

"{p}roducts sold and marketed in the United States as 'butt-weld pipe fittings' or fittings with

butt-welded ends come in many shapes and configurations and have numerous and varied uses"

and that "{t}hese products include caps, lap joint stub ends, and saddles").[7] But even if this

Court were to hold that Commerce could revise its position that both ends need to be butt-welded

---

[7] To support this assertion, Commerce cites Island Nov. 19, 2020 Remand Comments, at 7 and exhibits 1 through 4B. Commerce Final Remand Redetermination, at 23 nn.158 & 159. Vandewater noted, in its December 3, 2020 Rebuttal Remand Comments, that while caps and lap joint stub ends meet B16.9 and ASTM A-234 specifications for butt-weld pipe fittings, a saddle does not, and the Ladish catalog attached to Island's comments does not indicate that it meets B16.9 or A-234 specifications, or otherwise state that a saddle is a butt-weld pipe fitting. *See* Vandewater Dec. 3, 2020 Remand Comments, at 8-9.

ACTIVE.134159043.10

to hold that only one needs to be, that would not permit Commerce to say that Vandewater's grooved and threaded outlets, which have *no* butt-weld ends, are butt-weld pipe fittings.

As an example, for those lap joint stub ends that are capable of being butt welded, it is the non-flared end that has a bevel which may be capable of being butt-welded, and not the flared end, which is connected to another pipe or fitting with a flange. *See* Island Nov. 19, 2020 Remand Comments, ex. 3 (Hackney Ladish catalog), Remand PD 37, bar code 4055670-02, at 82 (showing illustration of lap joint stub end; it is the only the right-side (i.e., non-flared) end that shows a bevel); Scope Request, ex. 4 (ASME B16.9, Factory-Made Wrought Buttwelding Fittings), Table I-9 (showing engineering drawing of lap joint stub end, again showing bevel only on non-flared end). Finally, even if, *arguendo*, certain types of saddles could be considered butt-weld pipe fittings, it would be only be so if one end of the saddle (the end that contains a beveled branch) is constructed so as to be capable of being butt-welded, something that would be physically impossible for the header end where the "fish mouth" opening is. *See* Commerce Final Remand Redetermination, at 82 & n.529 (quoting SIGMA Rebuttal Comments, in support of assertion that "importers acknowledge" that certain saddles may be covered by the scope).

### 3. Saddles Are Distinguishable from Butt-Weld Pipe Fittings for Several Reasons.

While it is dispositive that Vandewater's threaded and grooved outlets have zero connections capable of being butt welded, it merits emphasis that a saddle is *not* a butt-weld pipe fitting. First, saddles are not included in the B16.9 specifications, which identify in detail the specifications, including end-to-end connections, dimensions, end connections, shapes, and wall thicknesses for all butt-weld pipe fittings. *See* Scope Request, ex. 4 (ASME B16.9, Factory-Made Wrought Buttwelding Fittings), ¶ 3 (size); Tables 1 through 11 and I-1 through I-11 (specifying dimensions and shapes); Table 12 (specifying welding bevels and root face), Tables

13 and I-12 (specifying tolerances); *see also infra* Section 2.C.1 (discussing importance of

industry standards). Saddles also do not perform the *function* of a pipe fitting, which is

important to the Court for purposes of the "uses" prong of the (k)(2) analysis. *See infra* Section

III. For example, saddles do not contain the pressure of the piping system, do not change the

direction of flow, and do not increase or decrease the flow through the pipeline. *See* 2016 ITC

Sunset Review, at 6 (explaining that "{b}utt-weld pipe fittings join pipes in straight lines and

change or divide the flow of fluids (oil, water, natural gas or other gasses, or steam)." Instead,

saddles serve as a mechanical reinforcement of a pipe into which a hole has been cut. If a hole is

cut into a pipe, the cut serves as a weak point in the pipe and a saddle can be used to reinforce

and strengthen that section of pipe. This is a characteristic that saddles share with outlets, but

not with butt-weld pipe fittings. Page 88 of the Hackney Ladish catalog, which Island submitted

for the administrative record, is instructive on this point. Hackney Ladish states that "{s}addles

are used to reinforce welded outlet connections on headers or branch pipes and are not intended

to retain internal pressure." Island Nov. 19, 2020 Remand Comments, exhibit 3 (Hackney

Ladish catalog), Remand PD 38, bar code 4055670-3, at 88. It is thus no wonder that the scope

language itself expressly *distinguishes* between butt-weld pipe fittings from "fittings based on

other fastening methods (*e.g.*, threaded, grooved, or bolted fittings)." *Certain Carbon Steel Butt-*

*Weld Pipe Fittings from the People's Republic of China*, 57 Fed. Reg. 29,702, 29,703 (Dep't of

Commerce July 6, 1992) (antidumping duty order and amended final determ.).

> ### C. Commerce's Analysis of Industry Standards Is Unsupported by Substantial Evidence.
>
> #### 1. Commerce Misunderstands the Importance of Industry Standards in Distinguishing Physical Characteristics of Product Groups.

Throughout the administrative proceeding, Vandewater has consistently emphasized that

a critical difference between outlets and butt-weld pipe fittings is that outlets meet the MSS-SP-

97 industry standard, which is different from the ANSI/ASME B16.9 specification that governs butt-weld pipe fittings. It is not just that, as discussed above, outlets are excluded from the comprehensive B16.9 specifications, but that they could not fit into those specifications, and end users rely on the different standards to differentiate the products. The B16.9 specification is referenced by butt-weld pipe manufacturers in its catalogs and specification sheets. *See* Island Nov. 19, 2020 Remand Comments, Exhibit 3 (Ladish catalog, pages 36 to 88, Remand PDs 37 & 38, bar codes 4055670-02 & 4055670-03 (showing B16.9 designation for each product that meets B16.9 requirements; most—but not all—of the Ladish catalog pages depict types of fittings that meet B16,9 requirements for butt-weld-pipe fittings). All butt-weld pipe fittings are manufactured following the guidelines set forth in the B16.9 specifications. Nowhere in the B16.9 specification are fittings with threads or grooves discussed.

In its Final Remand Redetermination, Commerce complains that "we continue to find that the importers give undue significance to ANSI/ASME B16.9 …." Final Remand Redetermination, at 94. With regard to the industry standards (B16.9 for butt-weld pipe fittings, MSS SP-97 for welded outlets), Commerce says that "the *China BWPFs Order* is silent as to industry standards, which indicates that they are not relevant for purposes of determining the scope of the order." *Id*. at 36. Commerce misapprehends the significance of the standards for a *(k)(2) analysis of physical characteristics*. Vandewater's argument here is that the MSS SP-97 specifications serve as a shorthand reflection of two distinct sets of physical characteristics, and purchasers recognize them to be different on precisely that basis.

Furthermore, Commerce's failure to comprehend the importance of industry standards demonstrates that its remand determination is unsupported by substantial evidence. Industries have standards for a reason. Industry standards result from collective work by experts in their

field and are a consensus of stakeholders concerning the design standards for making a product. In other words, they contain design specifications that universally define a product. As such, industry standards are *a fortiori* evidence of consensus product definitions and specifications, and the fact that the industry uses certain standards to describe welded outlets and different standards to describe butt-weld pipe fittings is relevant, if not dispositive evidence for a (k)(2) analysis. Commerce's decision to disregard the differences thus demonstrates that its remand redetermination is unsupported by substantial evidence.

Moreover, Commerce is wrong in asserting that "we find no reason to conclude that products conforming to MSS SP-97 cannot also be BWPFs." Final Remand Redetermination, 15 50-51. Mindful of the Court's instructions not to repeat arguments contained in the comments of other parties, we agree with, and incorporate by reference, SIGMA's argument in its remand redetermination comments that an attempt to re-categorize a product by assuming that it could conform to multiple industry standards, would render those standards meaningless.[8] Likewise, Commerce's attempt to assert that ANSI/ASME B16.9 and MSS SP-97 "contain substantial overlap" as a justification for claiming that there are no meaningful physical differences between welded outlets and butt-weld pipe fittings is flawed logically and disregards the logic of Court of Appeals precedent, again as discussed in detail in SIGMA's remand redetermination comments.

### 2. Commerce Misinterprets the ITC's Position on Industry Standards.

The ITC has repeatedly stated that "*{a}ll* butt-weld pipe fittings, whether imported or domestically produced, *must* meet ASTM and ANSI specifications." Vandewater Rebuttal Factual Information Letter (June 29, 2018), Ex. 1, PD 17, bar code 3725249-01, at A-3 (*Butt-*

---

[8] Vandewater also agrees with, and incorporates by reference, all arguments made by SIGMA in its comments to the Court.

*Weld Pipe Fittings from Brazil, Japan, and Taiwan*, Inv. Nos. 731-TA-308-310 (Prelim.), USITC Pub. 1834 (Apr. 1986)) (emphasis added); Ex. 2, PD 17, bar code 3725249-01, at A-5 (*Butt-Weld Pipe Fittings from Brazil and Taiwan*, Inv. Nos. 731-TA-308 & 310 (Final), USITC Pub. 1918 (Dec. 1986)) (hereinafter "USITC Investigation Final") (same); Ex. 5, PD 17, bar code 3725249-01, at 26 (*Carbon Steel Butt-Weld Pipe Fittings From Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310 & 520-521 (Review), USITC Pub. 3263 (Dec. 1999)) (same); Ex. 6, PD 17, bar code 3725249-01, at I-9 (*Carbon Steel Butt-Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310 & 520-521 (Third Review), USITC Pub. 4222 (Apr. 2011)) (same); Ex. 7, PD 17, bar code 3725249-01, at I-6 (*Carbon Steel Butt-Weld Pipe Fittings from Brazil, China, Japan, Taiwan, and Thailand*, Inv. Nos. 731-TA-308-310 & 520-521 (Fourth Review), USITC Pub. 4628 (Aug. 2016)) (same).

Commerce appears to have misread the ITC report from the original 1992 investigation when it infers that not all shipments of butt-weld pipe fittings from China met the ASME standard. Final Remand Redetermination at 49 & n.344 (citing USITC Investigation Final at I-10 through I-11); *id*. at 64 n.406 (footnote characterizing pages I-10 through I-11 of the ITC Final Investigation report as "noting that not all imported merchandise from China was in compliance with the applicable standard"). The ITC report instead says that "{t}he Chinese and Thai industries tend to be based on the hot-process for making elbows and do not possess the capability for heat-treatment or shot blasting"). ITC Investigation Final, at I-10 through I-11. In any event, Commerce does not deny that *all* grooved and threaded welded outlets must meet MSS-SP-97 standards, and do not fully meet ASME standards. Commerce also does not point to any specific types of butt-weld pipe fittings imported into the United States that fail to meet ASME standards, or offer any examples of butt-weld pipe fittings that fully meet the MSS-SP-97

ACTIVE.134159043.10

standards.  In short, there is no record evidence that establishes that the industry standards for the two groups of products are interchangeable.

### D.      Different HTSUS Classifications

In response to Vandewater's comment in the administrative proceeding below that its grooved and threaded welded outlets differ physically such that they are imported under different HTSUS subheadings, Vandewater Draft Redetermination Comments, at 30-31, Commerce's only retort is that "although we considered the decisions of CBP, we are not bound by such classifications.  Here, given our analysis regarding the physical characteristics of in-scope merchandise, {we} do not find that the CBP classification is suggestive of different physical characteristics between outlets and other BWPFs."  Final Remand Redetermination, at 89.

But that misses the point.  If HTSUS were the basis for a decision, Commerce, which is not bound by HTSUS classifications, would be within its rights to conclude that it is not *dispositive* of the scope issue.  But it is corroborating evidence that confirms what the other evidence in the record shows, as is discussed in detail in SCI's comments on the Draft Remand Redetermination.  SCI Comments on Draft Remand Redetermination (Nov. 19, 2020), Remand PD 8, bar code 4055590-01, at 18-19.  Commerce was not free to disregard it as part of the weight of the evidence on a (k)(2) analysis.

### III.      COMMERCE'S CONCLUSION THAT THE USES, THE EXPECTATIONS OF ULTIMATE USERS OF OUTLETS, AND THE CHANNELS OF TRADE DO NOT DIFFER FROM BUTT-WELD PIPE FITTINGS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

The ITC has explained the use and expectation of ultimate users of outlets by stating that "{b}utt-weld pipe fittings are used to connect pipe sections where conditions require permanent, welded connections."  2016 ITC Sunset Review, at I-4.

ACTIVE.134159043.10

In the Final Remand Redetermination, Commerce argues that "*{o}utlets and other BWPFs are, similarly*, expected to be welded into permanent, fixed piping systems for gases or liquids …." Final Remand Redetermination, at 90 (emphasis added). This is an over-simplification that focuses only on whether there are certain settings in which both butt-weld pipe fittings and outlets might be used, but which does not acknowledge the uncontradicted administrative record, which demonstrates conclusively that Vandewater's outlets are used only for functions in which its customers do *not* want and cannot use permanent connections. Vandewater Remand Comments Nov. 19, 2020, at 23. The reason that outlets are used, and the reason that lower pressure is necessary, is because the outlets are used for functions such as sprinkler heads, which must be capable of removal and replacement.[9] Butt-weld pipe fittings cannot be used for those functions.

In its Final Remand Redetermination, Commerce states as follows:

> As discussed above, the fact that Vandewater's outlets have a temporary connection on one end is not a feature that distinguishes outlets from other in-scope merchandise, and, therefore, does not change consumer's expectations regarding the product. Regarding this fact, Vandewater again asks Commerce to credit the expert affidavit it provided, rather than the other sources on the record, such as the ITC report, to ascertain the expectations of consumers and users. For the reasons stated above, we do not find that the affidavit represents more reliable evidence than other record evidence that was not created specifically for this scope proceeding.

Final Remand Redetermination, at 90.

Commerce's conclusion—that only one source supports the difference in function and design—is plainly inaccurate. As noted above, the ITC has explained the use and expectation of

---

[9] Regarding the header side of Outlets, as stated above, the header side is neither a butt weld nor is it welded in an end-to-end fashion, all of which distinguishes butt-weld pipe fittings from welded outlets.

ACTIVE.134159043.10

ultimate users of butt-weld pipe fittings by stating that "{b}utt-weld pipe fittings are used to connect pipe sections where conditions require permanent, welded connections." 2016 ITC Sunset Review, at I-4. Because the expectations of consumers and users of butt-weld pipe fittings *contrast* with Outlet users, which do *not* want permanent, fixed piping systems, the ITC Report is additional evidence in support of the lack of substitutability.

Furthermore, as noted in Vandewater's November 19, 2020 comments, the ultimate purchasers of Vandewater's steel branch outlets are all fabricators of fire *sprinkler* systems. Vandewater Nov. 19, 2020 Comments, at 22. Commerce does not (and cannot) deny this fact. Vandewater also stated that "{t}o the best of Vandewater's experience, no fire sprinkler uses any butt-weld pipe fittings for branch connections to sprinkler leads, because a butt-weld pipe fitting does not have the ability to accept a sprinkler head with threads." *Id*. at 22-23. Commerce also does not deny this fact. Likewise, no purchaser of butt-weld pipe fittings would consider substituting a grooved or threaded welded outlet, because these outlets are not designed with sufficient strength to be used for most butt-weld pipe fitting applications. *Id*. at 23. Commerce does not deny this point either.

Commerce notes that the Shyman Declaration says that both outlets and butt-weld pipe fittings are sold to distributors like Neill Supply. Final Remand Redetermination, at 93-94. From this, Commerce seems to imply that the fact that they may be sold in the same store means that they are the same. But this misses Mr. Shyman's point:

> Although welded branch outlets and butt-weld fittings are both sold to distributors like Neill Supply, the distributors then resell these two categories of products to *distinct market segments*. Neill Supply sold Vandewater's welded outlets to customers in the fire protection sprinkler industry. Neill Supply sold butt-weld fittings to a *totally different customer base*: mechanical and industrial contractors. When employed by Neill Supply in a sales capacity, *I would make sales calls in the morning on fire protection sprinkler*

> *contractors, and an afternoon call on a mechanical contractor. I would offer welded branch outlets to the fire protection sprinkler contractor, but not mention butt-welded fittings, because butt-welded fittings are not used for fire protection systems. Likewise, I would sell butt-welded fittings to the mechanical contractor, but would not offer welded branch outlets because 300# low pressure welded outlets are not used in mechanical piping systems.*

Vandewater Dec. 3, 2020 Remand Comments, attachment A (affidavit by Neil Shyman) (emphasis added). Likewise, Home Depot sells paint and flowers, but that says nothing about whether ultimate purchasers deem them to be the same product. Indeed, 100 percent of ultimate purchasers would say that they are not. Commerce's distribution argument is simply an attempt to gloss over the obvious relevant and material differences to ultimate purchasers between butt-weld pipe fittings and welded outlets. Commerce has disregarded the record evidence, all of which supports the difference in characteristics that make the products distinct, and the uses for them incapable of being substituted one for the other.

## IV. COMMERCE'S CONCLUSION THAT THE MANNER IN WHICH OUTLETS ARE DISPLAYED AND ADVERTISED DIFFERS FROM BUTT-WELD PIPE FITTINGS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

Regarding advertising, Commerce attempts to sidestep the point made by SIGMA in the remand administrative proceedings that Island's own advertising references particular end uses and industry standards, and both reflect the clear dividing line between butt-weld pipe fittings and outlets. Final Remand Redetermination, at 94. Commerce's only rebuttal is that "we continue to find that the importers give undue significance to ANSI/ASME B16.9, and those same considerations apply here." *Id.* But again, as SIGMA explains in detail in its comments to this Court on Commerce's final remand redetermination, the fact that customers use industry standards to identify which product is appropriate is significant.

The Court should also reject Commerce's assertion that outlets and butt-weld pipe fittings are "displayed side by side," Final Remand Redetermination, at 95 & n.577. Commerce cites

appendix B to the Petition ("seamless welding fittings pictorial index"), but that document does not include any welded outlets.  Commerce also cites exhibit 15 to Island's Rebuttal Comments, but that document does not show any traditional butt-weld pipe fittings, only variations on outlets: a "butt weld outlet,"[10] a "female threaded outlet," a "male threaded outlet," and a "grooved outlet."  Island Dec. 3, 2020 Rebuttal Remand Comments, ex. 10, Remand PD 46 & 47, bar codes 4061328-03 & 4061328-04.  Finally, Commerce cites exhibit 10 to Island's Rebuttal Comments, but this is merely the two spec sheets for the Aleum "female threaded outlets," and neither of the spec sheets contain any butt-weld pipe fittings.

Finally, Commerce's assertion that Vandewater's own product literature makes a reference to "Low Pressure Piping Systems," Final Remand Redetermination, at 95, does not change the fact that Vandewater does not advertise any product as a butt-weld pipe fitting, and the fact that they are used in low-pressure systems is consistent with their threaded, non-permanent connections.

---

[10] A butt weld outlet is an outlet where the branch end is configured to provide for a temporary connection, such as a threaded or grooved end, but instead is configured to accommodate a permanent butt weld, including the characteristic 37.5 degree bevel.  Vandewater Rebuttal Factual Information (June 29, 2018), at 14-15 (providing schematic from Island's own product brochure showing header pipe with a threaded outlet, a grooved outlet, and a butt-weld outlet, and explaining that the term "butt weld outlet" does not cover the types of welded outlets that Vandewater imports).  As has repeatedly emphasized throughout the administrative proceedings, Vandewater does not import butt weld outlets and its scope request does not cover butt weld outlets.  *See* Scope Request, at 33 n.56 ("Vandewater's branch steel outlets do *not* have the characteristics on the branch/outlet side to be considered "butt weld outlets") (emphasis original) ; Submission of the Department's Related Final Determination in Forged Steel Fittings Investigations (July 30, 2018), PD 31, bar code 3736526-01, at 3 ("{n}one of the products that are subject to Vandewater's scope request in the instant scope proceeding are 'butt weld outlets'").

ACTIVE.134159043.10

## V.    SUSPENSION OF LIQUIDATION AND CASH DEPOSIT REQUIREMENTS.

Mindful of the Court's instructions not to repeat arguments contained in the comments of other parties, we agree with, and incorporate by reference, Vandewater agrees with the comments that it understands are being submitted to the Court by Plaintiff-Intervenor Smith-Cooper International.  Vandewater also made extensive comments on the suspension of liquidation issue in response to Commerce's draft remand redetermination.  *See* Vandewater Comments on Draft Results of Redetermination Pursuant to Court Remand (Apr. 30, 2021), at 37-42.

## VI.    CONCLUSION.

For all of the above reasons, the Court should hold that Commerce's redetermination on remand is unsupported by substantial evidence.

Respectfully submitted,

/s/ Douglas J. Heffner
Douglas J. Heffner
D. Alicia Hickok
Richard P. Ferrin

**FAEGRE DRINKER BIDDLE & REATH LLP**
1500 K Street, N.W.
Washington, DC 20005

Counsel for Plaintiff Vandewater International Inc.

Dated: September 24, 2021

ACTIVE.134159043.10

**Certification of Compliance With Chambers Procedure 2(B)(1)**

The undersigned hereby certifies that the foregoing brief contains <u>8,095</u> words, exclusive of the table of contents, table of authorities, counsel's signature block, and certificate of service, and therefore complies with the maximum word count limitation for comments on remand set forth in the Chamber Procedures of the U.S. Court of International Trade.

<u>/s/ Richard P. Ferrin</u>
Douglas J. Heffner
D. Alicia Hickok
Richard P. Ferrin
**FAEGRE DRINKER BIDDLE & REATH LLP**

On behalf of Plaintiff Vandewater International, Inc.