UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

_____
                                       )
*Vandewater International, Inc.*       )
                                       )
        Plaintiff, )
                                       )
*v.*                                   )
                                       )
*United States*,                       )
                                       ) Court No. 18-00199
        Defendant. )
                                       )
    and                              )
                                       )
*Island Industries,*                   )
                                       )
        Defendant-Intervenors. )
_____)

**COMMENTS OF SMITH-COOPER INTERNATIONAL IN OPPOSITION TO
COMMERCE'S REMAND REDETERMINATION**

                                                                      Gregory S. McCue
                                                                        Zachary Simmons
                                                                       Steptoe & Johnson LLP
                                                                        1330 Connecticut Avenue NW
                                                                        Washington, DC 20036
                                                                        (202) 429-6421

                                                                        *Counsel to Smith-Cooper*
                                                                        *International, Inc.*

Dated: September 24, 2021

# TABLE OF CONTENTS

I. Welded Outlets Are Not Covered by the Scope. ................................................................... 1

II. Commerce Attempts to Impose Suspension of Liquidation Contrary to Law ................ 2

    A. Commerce's Redetermination Improperly Includes Suspension of Liquidation ..... 3

    B. The Regulation Requires that Suspension of Liquidation Must Apply Only as of the Date of Initiation of the Scope Inquiry ................................................................. 5

    C. There is No Previous Suspension of Liquidation to Continue .................................. 8

    D. Even a (k)(1) Finding Would Not Support Applying Suspension of Liquidation to Entries Made Prior to the Initiation of the Inquiry .................................................. 11

        1. The *Fasteners* Case Confirms that Commerce May Not Suspend Liquidation on Pre-Inquiry Entries ................................................................................................ 11

        2. The *Sunpreme* Case Also Confirms that Commerce May Not Suspend Liquidation in this Way ...................................................................................... 13

III. Conclusion ................................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

CASES

*Sunpreme Inc. v. United States,* 946 F.3d 1300, 1315-16 (Fed. Cir. 2020)....................13

*Sunpreme Inc. v. United States,* 256 F. Supp. 3d 1265, 1292 (Ct. Int'l Trade 2017).....................13

*United Steel and Fasteners, Inc. v. United States,* 947 F.3d 794 (Fed. Cir. 2020).........................11


## CODE OF FEDERAL REGULATIONS  Page(s)

19 C.F.R. § 351.225(k)(2)......................................................................................................1
19 C.F.R. § 351.225(l) ..................................................................................................3, 7, 8
19 C.F.R. § 351.225(l)(1) ..................................................................................................9, 13
19 C.F.R. § 351.225(l)(2)..........................................................................................................7
19 C.F.R. § 351.225(l)(3) ...................................................................................7, 9, 12, 13, 14


## OTHER AUTHORITIES  Page(s)

Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws
    85 Fed. Reg. 49472, (proposed Aug. 13, 2020) (to be codified at 19 C.F.R. pt. 351)............7

Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300 (Sept. 20, 2021) ..........................................................................8

Pursuant to this Court's order dated August 4, 2021, ECF No. 128, granting Smith-Cooper International, Inc. ("SCI") status as a plaintiff-intervenor in this case, and the Court's scheduling order dated August 5, 2021, ECF No. 130, SCI hereby submits its comments on the Department of Commerce's ("Commerce") redetermination on remand ("Redetermination"), dated July 22, 2021, issued following this Court's October 16, 2020 decision, ECF No. 111.

I.    **Welded Outlets Are Not Covered by the Scope.**

In its Redetermination, Commerce finds that, pursuant to 19 C.F.R. § 351.225(k)(2), Vandewater's welded outlets are subject to the scope of the Order. SCI opposes this finding. In its comments and rebuttal comments filed at Commerce in November and December 2020, SCI explained why Commerce should find that Vandewater's welded outlets are outside the scope of the Order. SCI's comments are part of the record in this case. Letter to Commerce re: SCI Scope Inquiry Pt. 1, PD 8, barcode 4055590-01 (November 19, 2020); Letter to Commerce re: SCI Scope Inquiry Pt. 2, PD 8, barcode 4055590-02 (November 19, 2020); Letter to Commerce re: SCI Scope Inquiry Pt. 3, PD 8, barcode 4055590-03 (November 19, 2020); Letter to Commerce re: SCI Rebuttal Comments, PD 48, barcode 4061337-01 (December 3, 2020). In April 2021, SCI submitted detailed comments explaining why Commerce's draft results of redetermination on remand, largely unchanged here, were substantially flawed in incorrectly finding that Vanderwater's welded outlets are covered by the scope of the instant Order. SCI's comments are part of the record in this case. Letter to Commerce re: SCI Comments on Draft Remand Redetermination, PD 58, barcode 4116549-01 (April 30, 2021).

To avoid duplication of arguments before the Court, we incorporate by reference, and adopt herein in full, the comments filed by SCI and Vandewater to Commerce as comments in

the Remand proceeding, SCI also adopts and incorporates herein the comments filed with the Court by Vandewater and SIGMA this same day.

II.     **Commerce Attempts to Impose Suspension of Liquidation Contrary to Law**

In its Redetermination, Commerce seems to admit that the entries subject to the findings of this remanded scope inquiry must only be entries made on or after the date of initiation of the scope inquiry. This is demonstrated by Commerce's concession that, for any entries made prior to that date, Commerce intends to instruct CBP, right away, to refund the cash deposits paid on such entries. However, despite the appropriate release of such cash deposits, Commerce nonetheless proposes to keep these same pre-inquiry entries subject to suspension of liquidation. Commerce proposes this imposition of suspension so that it can re-issue bills (and apparently re-collect the same refunded cash deposits) in the event that a further appeal overturns this Court's decision that required the instant (k)(2) analysis. Commerce provides no citation to or analysis of any authority to support its proposal to continue to apply suspension of liquidation to entries made prior to the date of initiation of the underlying scope inquiry and all the way back to the date of the original 1992 Order.

While SCI agrees with Commerce's proposal to refund cash deposits, Commerce's proposal to continue suspension of liquidation is contrary to law. The agency is attempting to achieve a result – suspension "just in case" – that it has no authority to impose. Had Commerce properly decided[1] this case, moving to a (k)(2) analysis from the beginning, as the Court has now

---

[1] As SCI has repeatedly submitted to Commerce and this Court, SCI believes that under the (k)(0) analysis and the (k)(1) analysis, the available information strongly supports the conclusions that the welded outlets subject to this case are outside the scope of the Order. But, at a minimum, and as was confirmed by the Court, ECF No. 111, Commerce could have and should have found that, if the (k)(0) and (k)(1) analyses were indeterminate, a (k)(2) analysis was required. And, in that case, under (k)(2), the cash deposit and suspension requirement would have applied then, as it should now, only to entries made on or after the date of the initiation of the scope inquiry. There would have been, and still is, no authority for Commerce to impose the pre-inquiry suspension that it now proposes to the Court.

2

required it to do, Commerce would have initiated a scope inquiry then, and all entries prior to the date of initiation of the scope inquiry would now be ***both*** unburdened by cash deposits ***and also*** not subject to any suspension of liquidation. That would have remained true even if the petitioner had appealed Commerce's decision to move past a (k)(1) analysis, and on to a (k)(2) analysis. That is to say – those pre-initiation entries would have been liquidated during the pendency of the appeal. Indeed, Commerce's apparent excuse, that it might want to impose retroactive cash deposits again if its previous (k)(1) decision were to be reinstated on appeal, has no basis in the applicable regulation and has previously been rejected by the Federal Circuit, as explained further below.

Commerce attempts here to achieve a suspension of liquidation that could not otherwise exist and proposes this result with no authority or support. The Court should not permit this result. The Court should require Commerce to place the pre-inquiry entries in the only status that applies under the regulations, which also is the only status that is permitted by the relevant Federal Circuit precedent. We respectfully submit that this Court must require Commerce to release from the suspension of liquidation entries made prior to the date of initiation of the scope inquiry.

> A. **Commerce's Redetermination Improperly Includes Suspension of Liquidation**

In its Redetermination, Commerce expresses its intention to comply with the applicable law. Commerce states:

> In light of the Court's Remand Order, should the Court affirm this remand redetermination in a subsequent decision, Commerce intends to issue instructions to CBP consistent with 19 C.F.R 351.225(l) and section 516A(c) and (e) of the Act.

For reference, 19 C.F.R 351.225(l) states, in pertinent part:

3

> (2) If the Secretary issues a preliminary scope ruling under paragraph (f)(3) of this section to the effect that the product in question is included within the scope of the order, any suspension of liquidation described in paragraph (l)(1) of this section will continue. If liquidation has not been suspended, the Secretary will instruct the Customs Service <u>to suspend liquidation and to require a cash deposit</u> of estimated duties, at the applicable rate, for each unliquidated entry of the product entered, or withdrawn from warehouse, for consumption <u>on or after the date of initiation of the scope inquiry</u>. If the Secretary issues a preliminary scope ruling to the effect that the product in question is not included within the scope of the order, the Secretary will order any suspension of liquidation on the product ended, and will instruct the Customs Service to refund any cash deposits or release any bonds relating to that product. (emphasis added)

This clear language requires that suspension of liquidation and cash deposits both apply only to entries made on or after the date of the initiation of the scope inquiry. Despite Commerce's immediately preceding statement that it "intends to issue instructions to CBP consistent with" this regulation, Commerce then immediately violates this regulation regarding suspension of liquidation. Commerce states:

> With respect to entries pre-dating the date of initiation of the inquiry … Commerce intends to instruct CBP to refund cash deposits upon request <u>but continue to suspend</u> the entries at a zero percent cash deposit rate pending any appeals. In the event that the Court's final judgment is not appealed or is upheld on appeal, Commerce intends to instruct CBP to lift suspension of liquidation and liquidate such entries without regard to antidumping duties.

Thus, for entries made prior to the initiation of the scope inquiry, despite the explicit language of the regulation applying suspension of liquidation only to entries made on or after the date of initiation, Commerce proposes to apply suspension to all entries made prior to that date, all the way back to the original 1992 Order. Commerce seems to concede that these pre-inquiry entries must be handled differently under the regulation, and must now have a change in status, because Commerce proposes to refund immediately the cash deposits paid on such pre-inquiry entries,

even while this case continues. However, contrary to the clear language of the regulation, Commerce nonetheless proposes to bifurcate its treatment of cash deposits and suspension of liquidation, retaining only the latter. Commerce provides no citation or authority for this proposal. There is nothing in the regulation that suggests that cash deposits and suspension should be handled differently, since both are addressed in the very same sentence of the regulation.

### B. The Regulation Requires that Suspension of Liquidation Must Apply Only as of the Date of Initiation of the Scope Inquiry

As noted above, Commerce's regulation specifically requires that suspension of liquidation be applied only to entries made on or after the date of initiation of the scope inquiry. Commerce provides no authority or analysis for its proposal, despite its stated intention to issue instructions consistent with the regulation.

Commerce initiated the formal scope inquiry in this matter on October 30, 2020, when it filed its initiation of scope inquiry letter. Letter from Commerce re: Scope Inquiry Initiation, PD 1, barcode 4047169 (October 30, 2020). In this October 2020 initiation letter, Commerce stated that it was "hereby initiating a formal scope inquiry, pursuant to 19 CFR 351.225(e), to evaluate the (k)(2) factors and determine whether Vandewater's steel branch outlets are covered by the scope of the above-referenced order." Indeed, Commerce's document is entitled "Initiation of Scope Inquiry." Accordingly, the date of the initiation – October 30, 2020 – is clear. Commerce seems to recognizes this, when it states that it intends to release cash deposits on entries made prior to that date. However, Commerce provides no authority for deviating from the regulation and for continuing to impose suspension of liquidation on entries made prior to October 30, 2020 and all the way back to the original 1992 Order.

Commerce says that it takes this step "pending any appeals." And, Commerce states that "{i}n the event that the Court's final judgment is not appealed or is upheld on appeal, Commerce intends to instruct CBP to lift suspension of liquidation and liquidate such entries without regard to antidumping duties." In other words, Commerce is attempting to hedge its bets. Apparently, Commerce proposes to hold the entries in suspended status *just in case* there are further steps on appeal which reinstate its (k)(1) decision, and in that case, it would collect again the same cash deposits that it soon will release.

Commerce's proposal is fundamentally flawed in that it attempts to achieve a result that could not have been realized had it followed its regulation in the first place, when it was deciding Vandewater's scope ruling request the first time. Had Commerce properly recognized that analysis under either (k)(0) or (k)(1) could not support[2] finding that welded outlets are subject merchandise, it would have moved to a (k)(2) analysis. And, at that time, Commerce would have initiated a formal scope inquiry and applied suspension of liquidation only to entries made on or after the date of initiation. Further, even if any party to the scope proceeding had appealed from a (k)(2) result, arguing that the (k)(1) sources should apply, those pre-initiation entries would have remained in unsuspended status. And, those pre-inquiry entries likely would have liquidated during the appeal and would not have been available even if the (k)(1) analysis was imposed on appeal, after remand. This is the clear result of the regulation's limitation of the effective date in these cases. Thus, Commerce attempts to achieve a result here that would never

---

[2] As noted above, we have respectfully submitted that the (k)(0) and (k)(1) analyses demonstrated that these outlets could not be considered subject to the scope. But, at an absolute minimum, and as this Court has found, those analyses could not demonstrate that these welded outlets were subject to the scope and, in that case, Commerce should have at least moved to (k)(2) at the time of the original work. This would have triggered a formal initiation of scope inquiry (as it eventually did here) and Commerce would have necessarily recognized the effective date then, which it fails to do now.

otherwise apply, contrary to Commerce's own explicit regulation. This Court should not permit such result.

Indeed, Commerce recently provided a clear description of how the provisions of 19 C.F.R. 351.225(l) operate, which confirms that Commerce lacks the authority under these regulations to order suspension of liquidation of entries made prior to the initiation of the scope inquiry. On August 13, 2020, Commerce published a notice in the Federal Register discussing, *inter alia*, proposed amendments to 19 C.F.R. 351.225. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49472, (proposed Aug. 13, 2020) (to be codified at 19 C.F.R. pt. 351). In that notice, the Department contrasts how the rules for suspension of liquidation under 19 C.F.R. 351.225(l) would operate under the proposed amended regulations with how the rules operate in their current form. *See id.* In describing the current operation of 19 C.F.R. 351.225(l)(2) and (3), the Department states:

> current paragraphs (l)(2) and (3) provide that if Commerce issues an affirmative preliminary or final scope ruling pursuant to a formal scope inquiry, then ''any suspension of liquidation'' will continue. <u>Where there has been no previous suspension of liquidation, Commerce will direct CBP (in the event of an affirmative preliminary or final scope ruling) to suspend liquidation of unliquidated entries *dating back to the date of initiation of the scope inquiry*</u>.

*Id.* at 49,482 (emphasis added). Subsequently, the Department explains that under the current provisions of 19 C.F.R. 351.225(l) "<u>all entries not already suspended prior to the date on which Commerce initiates a scope inquiry are essentially excused from AD/CVD duties</u>, even if Commerce finds through the scope inquiry that such duties should have applied." *Id.* at 49,483 (emphasis added). Thus, the Department's own description of the operation of 19 C.F.R. 351.225(l) confirms that – notwithstanding its proposal in the present Redetermination before

7

this Court – all pre-inquiry entries are "excused" from such suspension of liquidation. Accordingly, there is no basis in the regulations for continuing to impose suspension of liquidation on such "excused" entries.

This clear meaning of the regulation was further confirmed by Commerce in its recently-published final rule on these revised regulatory procedures. *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (September 20, 2021). For instance, Commerce states:

> {C}urrent paragraph (l) allows for Commerce to direct CBP to begin the suspension of liquidation of unliquidated entries not yet suspended which entered on or after the date of initiation of the scope inquiry, and collect applicable cash deposits, at the time of a preliminary or final scope ruling, whichever is applicable, determining that the product is covered by the scope of an order. The current regulation does not address unliquidated entries not yet suspended which pre-date the date of initiation of the formal scope inquiry.

*Id.* at 52,325. In that same notice, Commerce further clarifies that:

> Commerce is modifying § 351.225(l) to provide that Commerce normally will apply a scope ruling that a product is covered by the scope of an order to unliquidated entries not yet suspended which entered prior to the date of initiation of the scope inquiry, with certain exceptions.

*Id.* at 52,315, n. 65 (emphasis added). Such statements by Commerce confirm the clear language of the regulation and its practical impact on the effective date of scope decisions. And, these recent, published statements are directly counter to Commerce's proposal in the Redetermination to suspend liquidation on entries made prior to the initiation of the scope inquiry, back to the date of the original 1992 Order.

**C.    There is No Previous Suspension of Liquidation to Continue**

Prior to the issuance of Commerce's (k)(1) decision to Vandewater in September 2018, there was no suspension of liquidation present on this merchandise because Commerce had made

8

no prior statement regarding suspension of liquidation for this type of welded outlet. Thus, there is no basis for Commerce to apply suspension of liquidation, back to the 1992 inception of the Order, based on continuation of some previous suspension of liquidation (which does not exist).

In its ***draft*** redetermination in this matter, circulated to the parties in April 2021, Commerce also attempted to continue both the cash deposit requirement and suspension of liquidation, for all entries, back to the 1992 inception of the Order. But in that draft redetermination, Commerce presented an argument, stating:

> However, 19 CFR 351.225(l)(1) requires that, if "the product in question is already subject to suspension of liquidation, that suspension of liquidation will be continued, pending a preliminary or a final scope ruling, at the cash deposit rate that would apply if the product were ruled to be included within the scope of the order." Additionally, under 19 CFR 351.225(l)(3), when Commerce issues a final scope ruling finding that the product in question is included within the scope, "any suspension of liquidation under paragraph (l)(1)... of this section will continue."

*See* Letter from Commerce to the ITC re: VW draft remand redetermination, PD 53 at 61, barcode 4111297-01 (April 19, 2021). Commerce continued:

> Vandewater has not provided any information to show that its outlets were not subject to the suspension of liquidation prior to the date of initiation of this scope inquiry. Further, while SCI claims that the outlets in question were not already subject to the suspension of liquidation, it has not provided any information to support its claim. Because the record does not demonstrate that Vandewater's outlets were not subject to the suspension of liquidation prior to October 30, 2020, we find it unnecessary to change Commerce's previous instruction that, consistent with 19 CFR 351.225(l)(1) and (l)(3), directed CBP to continue any suspension of liquidation of entries of outlets imported by Vandewater.

*See* Letter from Commerce to the ITC re: VW draft remand redetermination, PD 53 at 61-62, barcode 4111297-01 (April 19, 2021). Thus, Commerce's draft redetermination initially attempted to turn the regulation on its head, arguing that, since there was no evidence that the

9

goods were not subject to suspension of liquidation, there must have been a previous suspension of liquidation and, thus, that imaginary suspension should be continued. Of course, there was no evidence of a previous suspension of liquidation because none existed, that is, because Commerce does not issue generalized statements regarding goods not covered by scopes.

In comments on the draft redetermination, Vandewater, SCI, and SIGMA all explained the flaws in Commerce's reasoning, which Commerce outlines in the present Redetermination before this Court, at 96-102. Commerce seems to have recognized that its draft redetermination position was untenable because it has abandoned this argument in the Redetermination now presented to this Court. Commerce seems to no longer argue for the existence of some pre-existing suspension of liquidation, that it can "continue" under the regulation. Commerce seems to have retracted the argument, because it is nowhere present in the Redetermination submitted to this Court. In the present Redetermination, Commerce now merely asserts its intention to comply with the regulation, takes a step that is contrary to the regulation (full retroactive suspension of liquidation back to the date of the 1992 Order), and provides no analysis of the regulatory text or any other citation or support for its actions.

As of now in this case, the (k)(1) decision has been struck down by this Court. Accordingly, there is no (k)(1) decision to apply. Any suspension of liquidation that Commerce announced as part of its (k)(1) decision in September 2018 is, similarly, struck down. Accordingly, there is no previous suspension of liquidation to continue now. This matter is governed by the present (k)(2) analysis. And, as part of its (k)(2) analysis, Commerce initiated the present scope inquiry on October 30, 2020. Under the plain language of the regulation, under the current (k)(2) proceeding, the suspension of liquidation cannot apply to any entries made prior to that date.

10

And, even if Commerce's (k)(1) decision were to be revived on appeal, there was no suspension of liquidation prior to that date that could be continued in September 2018 or now. Moreover, the consistent decisions of the Federal Circuit (discussed below) make clear that, in a (k)(1) case, the suspension of liquidation may not apply to entries made prior to the date of that (k)(1) decision which, for Vandewater, was September 10, 2018. But, Commerce does not make this argument in the present Redetermination. Commerce merely asserts blanket suspension of liquidation, on all entries, retroactively back to the 1992 Order, without citation or analysis. The Federal Circuit decisions described below prohibit this sort of boundless retroactive application of suspension of liquidation. Even if the (k)(1) analysis were to be reinstated, suspension of liquidation cold not apply back to the date of the original 1992 Order, as Commerce proposes here.

> **D. Even a (k)(1) Finding Would Not Support Applying Suspension of Liquidation to Entries Made Prior to the Initiation of the Inquiry**

A fundamental failure in Commerce's reasoning, in addition to the points above, is that even if the current analysis were to be overturned on appeal to the Federal Circuit, and even if a (k)(1) analysis were to be found applicable on appeal in this case, the Federal Circuit already has confirmed that such goods may not be subject to the sort of far-reaching, retroactive suspension of liquidation back to the date of the original antidumping order. Accordingly, we respectfully submit that this Court cannot allow Commerce to impose this overly-broad and unlawful approach to suspension of liquidation.

> **1. The *Fasteners* Case Confirms that Commerce May Not Suspend Liquidation on Pre-Inquiry Entries**

Commerce's proposed approach, to impose suspension of liquidation on all entries, back to the date of the 1992 Order, is flatly contrary to the Federal Circuit's decision in *United Steel and Fasteners, Inc. v. United States* ("*Fasteners*"). *United Steel and Fasteners, Inc. v. United*

11

*States*, 947 F.3d 794 (Fed. Cir. 2020). In *Fasteners*, United Steel and Fasteners, Inc. ("US&F") requested a scope ruling (like Vandewater) from Commerce, alleging that its products were not covered by an existing AD order from 1993. Previously, US&F had been importing its products without declaring them subject to the AD order. *Id.* at 797. Without initiating a scope inquiry (just as Commerce originally did[3] with Vandewater), Commerce issued a final scope ruling that US&F's products were within the scope of the order based on (k)(1) sources (like Vandewater) and instructed CBP to suspend liquidation of all unliquidated entries made since the imposition of the antidumping order – *i.e.*, October 1993 (like Vandewater). *Id.* at 798.

The Federal Circuit made clear that Commerce may not stretch suspension of liquidation retroactively in this way. The Federal Circuit held that where Commerce does not initiate a scope inquiry, and yet issues instructions to CBP to retroactively suspend liquidation to the date of the AD order at issue, Commerce's instructions are "'clearly inconsistent with the limited prospective authority provided' by § 351.225(l)(3) and must be vacated." *Id.* at 802 (internal citations omitted). The court unequivocally stated that "{19 C.F.R. § 351.225(l)(3)} is clear. When Commerce issues a final scope ruling, and liquidation has not previously been suspended, Commerce may suspend liquidation beginning 'on or after the date of initiation of the scope inquiry.' The regulation does not allow suspension of liquidation before a scope inquiry." *Id.* at 801 (internal citations omitted). The Federal Circuit found that Commerce's attempt to retroactively suspend liquidation back to the date of the original order was "'clearly inconsistent with the limited prospective authority provided' by § 351.225(l)(3) and must be vacated." *Id.* at

---

[3] In its original 2018 decision for Vandewater, Commerce issued its decision based on (k)(1) without initiating a formal scope inquiry. This is the same pattern shown in the *Fasteners* case. As shown above, Commerce should have moved past (k)(1) and on to (k)(2) and initiated a formal scope inquiry. However, if the (k)(1) analysis is reinstated on appeal, then the Vandewater case will be back in the same procedural position as the *Fasteners* case and, thus, the Federal Circuit's *Fasteners* holding would apply to prohibit Commerce's proposed retroactive suspension of liquidation on Vandewater entries back to the date of the Order.

12

802. Moreover, the Federal Circuit found that Commerce's interpretation on this point was not "within the bounds of reasonable interpretation" and, therefore, not entitled to deference. *Id.* Accordingly, the Federal Circuit affirmed the CIT's approval of Commerce's suspension of liquidation only as of as the issuance of the final scope ruling.

Thus, the Federal Circuit's decision in *Fasteners* prohibits Commerce from doing precisely what it attempts to do in the instant case, namely, improperly instructing CBP to suspend liquidation of entries bask to the date of the Order, and prior to the date of any scope inquiry or even (k)(1) decision.

### 2. The *Sunpreme* Case Also Confirms that Commerce May Not Suspend Liquidation in this Way

In *Sunpreme Inc. v. United States* ("*Sunpreme*"), the product at issue first became subject to suspension of liquidation when CBP, on its own initiative, determined that the product, despite being entered as a "type 01" (non-AD/CVD) entry, was subject to the scope of existing AD/CVD orders. Following a subsequent scope inquiry by Commerce which concluded that the product was, in fact, subject to the AD/CVD orders, Commerce instructed CBP to continue suspension of liquidation and collect cash deposits pursuant to 19 C.F.R. §§ 351.225(l)(1) and (l)(3) (*i.e.*, back to the date on which CBP initially commenced suspension *sua sponte*). *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1315-16 (Fed. Cir. 2020) ("*Sunpreme*").

On appeal, the CIT vacated Commerce's instructions to CBP in part, holding that the suspension of liquidation could not lawfully cover entries made prior to the initiation of the formal scope inquiry because CBP's initial suspension of liquidation was *ultra vires* and, thus, of no legal effect. *Sunpreme Inc. v. United States*, 256 F. Supp. 3d 1265, 1292 (Ct. Int'l Trade 2017). In its *en banc* review of the CIT's decision, the Federal Circuit framed the central issue as whether the original suspension of liquidation by CBP was legally effective. Finding that it

13

was, the Federal Circuit went on to uphold Commerce's instructions to CBP, based on the following interpretation of Commerce's regulation:

> subsection (l)(3) distinguishes {between}…two scenarios. When Commerce rules that a product falls within the scope of an order, but "there has been no previous suspension of liquidation," a new suspension must be ordered beginning only "on or after the date of initiation of the scope inquiry." 19 C.F.R. § 351.225(l)(3). Anything else would be impermissibly retroactive, as we acknowledged in *AMS*. But where, as here, a suspension that predates the scope inquiry already exists, subsection (l)(3) instead dictates that the existing suspension "will continue." No retroactivity concerns are raised because no new suspension occurs.

*Sunpreme*, 946 F.3d 1300, 1319. Importantly, the Federal Circuit predicated its upholding of Commerce's instructions to CBP in *Sunpreme* on the fact that "a suspension that predates the scope inquiry already exist{ed}." In the underlying scope inquiry in this case, by contrast, there is no suspension that predates the (k)(1) decision that could validly qualify as a basis to "continue" suspension upon Commerce reaching its final scope determination. For Vandewater, there was no suspension of liquidation place prior to the September 2018 (k)(1) decision. And, under *Fasteners*, when there has been no other formal initiation of scope inquiry, Commerce is prohibited from ordering any suspension of liquidation on entries made prior to the (k)(1) decision. Accordingly, based on the Federal Circuit's analysis in *Sunpreme*, Commerce does not possess the legal authority to suspend entries made back to the date of the 1992 Order.

### III. Conclusion

For all the reasons above, we respectfully submit that this court should find that Vandewater's welded outlets are not subject to the scope of the Order. Alternatively, even if they are, we respectfully request that Commerce may not apply suspension of liquidation retroactively, back to the date of the original 1992 Order, as it attempts to do here.

14

Respectfully submitted,

/s/ Gregory S. M<sup>c</sup>Cue
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone: (202) 429-6421

September 24, 2021                    *Counsel to Smith-Cooper International, Inc.*

### Certification of Compliance With Chambers Procedure 2(B)(1)

The undersigned hereby certifies that the foregoing brief contains 4,706 words, exclusive of the table of contents, table of authorities, and counsel's signature block, and therefore complies with the maximum word count limitation for comments on remand set forth in the Chamber Procedures of the U.S. Court of International Trade.

                                          /s/ Gregory S. M<sup>c</sup>Cue
                                          STEPTOE & JOHNSON LLP
                                          1330 Connecticut Avenue, N.W.
                                          Washington, DC 20036
                                          Telephone: (202) 429-6421

                                          *Counsel to Smith-Cooper International, Inc.*

Dated: September 24, 2021